IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

## ASHLEY NICOLE THOMAS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 9732      A. Blake Neill, Judge**
_____

## No. W2024-00987-CCA-R3-PC
_____

Petitioner, Ashley Nicole Thomas, appeals the denial of her post-conviction petition, in which she challenged her multiple convictions related to the sexual abuse of a child and her effective forty-year sentence. On appeal, Petitioner maintains that her trial counsel was ineffective. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

Shelby L. Combs (at hearing and on appeal), Atoka, Tennessee, for the appellant, Ashley Nicole Thomas.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Mark Davidson, District Attorney General; and Sean G. Hord, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

*Trial*

The Tipton County grand jury indicted Petitioner on thirteen charges related to the sexual abuse of her biological minor daughter ("the victim") by Petitioner and her boyfriend, David Henson. *State v. Thomas*, No. W2021-00534-CCA-R3-CD, 2022 WL 4963715, *1 (Tenn. Crim. App. Oct. 4, 2022), *perm. app. denied* (Tenn. Jan. 12, 2023). Petitioner proceeded to trial in July 2020, during which the following evidence in relevant part was presented.

When the victim was approximately nine years old, she disclosed to her grandmother, who was also Petitioner's mother, that Mr. Henson had sexually abused her. *Id*. at *2-3. The grandmother soon contacted the police, and an officer contacted the Department of Children's Services (DCS) to interview the victim. *Id*. at *3. In the forensic interview, the victim revealed that Petitioner had physically and sexually abused her since she was seven years old, and "pretty much every day" from age eight to nine years old. *Id*. at *3-4. This abuse included Mr. Henson's showing the victim pornographic videos while she, Mr. Henson, and Petitioner were naked; Mr. Henson's forcing the victim to perform oral sex on numerous occasions while Petitioner also engaged in sexual acts with Mr. Henson; Mr. Henson's and Petitioner's demonstrating sexual positions to the victim; Mr. Henson's attempting to penetrate the victim's vagina with his penis when she was nine years old; and Petitioner's touching the victim in "[t]he front" with Petitioner's hand on one occasion while Petitioner and Mr. Henson where having sex. *Id.*

Munford Police searched Mr. Henson and Petitioner's house after obtaining their written consent and found several pornographic DVDs, books of a sexual nature, adult toys, and condoms. *Id.* at *6. The pornographic DVDs were destroyed by the State before Petitioner's trial. *Id.* at *15.

Mr. Henson testified that he had entered best-interest pleas to several charges, including rape of a child, during the course of his separate jury trial. *Id.* at *6. He denied that he or Petitioner had sexually abused the victim or that he and Petitioner had ever had sex "in front of the children." *Id.* He admitted putting a condom on a banana on one occasion. *Id.*

Petitioner testified on her own behalf at trial and described an abusive relationship, both physically and sexually, with a prior boyfriend. *Id.* She stated that after she moved to Mississippi, she met Mr. Henson online, and she and her two daughters returned to Tennessee to live with Mr. Henson when the victim was six years old. *Id.* Petitioner said that although she first considered Mr. Henson a roommate, their relationship became intimate, and she became pregnant with his child around the time they all moved to Munford. *Id.* She said Mr. Henson became abusive to her, both physically and verbally. *Id.* at *9. She said she moved out of the home for a few weeks while pregnant before she reconciled with Mr. Henson. *Id.*

Petitioner admitted that pornographic movies and adult toys were in the home, but she said that they were locked in a "closet" and that she did not know that the victim had watched the movies. *Id.* She said when she and Mr. Henson would have sex, it was always in their bedroom behind a closed door and never in other rooms of the house or in front of the children. *Id.* Petitioner denied ever witnessing Mr. Henson having any sexual interest

in children, and the victim never told her that he did or otherwise acted in a way to arouse her suspicions. *Id.* Petitioner claimed that the first time she heard of Mr. Henson's abuse of the victim was during the police investigation, and the first time she heard that the victim said Petitioner was involved was during Mr. Henson's trial. *Id.* Petitioner denied that the victim ever saw her naked, that she encouraged the victim to have sex with Mr. Henson, or that she showed the victim how to use a condom. *Id.* Rather, Petitioner said that the victim's allegations against her were false. *Id.* Despite admitting to supporting Mr. Henson during his trial, Petitioner said that she thought he was guilty and that "he got what he deserved." *Id.* at *10.

The jury convicted Petitioner of (1) aggravated neglect of a child eight years of age or less; (2) aggravated child neglect; (3) sexual exploitation of a minor (three counts); (4) facilitation of sexual exploitation of a minor; (5) criminal responsibility for the rape of a child (three counts); and (6) continuous sexual abuse of a child, and Petitioner received an effective forty-year sentence. *Id.* at *11. This court reversed and vacated Petitioner's conviction for continuous sexual abuse of a child, remanded her case for a corrected judgment on one of her sexual exploitation of a minor convictions, and affirmed her other convictions. *Id.* at *18. The trial court again imposed an effective forty-year sentence.

*Post-conviction Hearing*

Petitioner subsequently filed a pro se petition and an amended petition for post-conviction relief through counsel, alleging that she received ineffective assistance of counsel. As relevant to the issues raised on appeal, Petitioner asserted that trial counsel ("Counsel") was ineffective in failing to investigate and develop alternative theories to explain the victim's statements, in failing to question other men with whom the victim had contact at the time of the offenses, in failing to review the results of Petitioner's prior psychological evaluation or obtain a second evaluation, in failing to introduce evidence at trial that Petitioner was not present when the abuse occurred, in failing to raise an issue regarding the State's failure to provide adequate discovery in her motion for new trial, and in failing to present a defense theory that the victim was exposed to the acts about which she testified through other means. On May 22, 2024, the post-conviction court conducted an evidentiary hearing of the petition for post-conviction relief during which two witnesses, Petitioner and Counsel testified.

Petitioner testified that after she was criminally charged, she initially had hired another attorney to represent her. That attorney wanted her "to plead out," but because Petitioner "was not satisfied with that," she hired Counsel to represent her at trial. Petitioner said she met with Counsel approximately ten to twelve times throughout the pendency of her case. Petitioner said she provided Counsel information about her case, documentation and medical records, and the names of potential witnesses and other

individuals to aid in her defense. These witnesses included "the babysitter" and Petitioner's "stepdad." Petitioner claimed that Counsel failed to investigate this information or question any of the potential witnesses or individuals whose name she had provided Counsel. Petitioner also referenced her mental health issues, saying that she "went on my own" before her trial to get "counseling," and had been diagnosed with "manic depression," post-traumatic stress disorder, and "Stockholm syndrome." Petitioner said she thought she told Counsel about her diagnoses but had not provided Counsel with any records showing she had the conditions. Petitioner said she signed a "waiver" for Counsel to obtain her medical records, but she did not know if Counsel received them. Petitioner said the medical records may have proven that she had "some issues going on." She also claimed she had provided "work records" to Counsel to serve as alibi proof that she could not have committed some of the offenses, but Counsel did not use them at trial. Petitioner admitted that Counsel had conveyed plea offers from the State, but Petitioner "didn't want to plead" guilty and insisted on going to trial. Petitioner said that she wished Counsel would have shown she "was a good mom" and that she "had no knowledge of anything that was happening" in her defense. Petitioner said she wanted Counsel to have called her mother, brother-in-law, and a coworker named "Sierra Smith" as witnesses at trial. She said Ms. Smith would have testified about Petitioner's "good character."

On cross-examination, Petitioner admitted that that at the post-conviction hearing, she had neither the medical records nor the work records that she claimed would have aided her defense. The records were not made exhibits at the post-conviction hearing. Although she said the babysitter's first name was "Christina," she could not recall the last name. She acknowledged that she had testified at trial and that she was "given an opportunity to explain to the jury" that she was not present during the crimes.

Counsel testified that she began representing Petitioner in her underlying case in 2019. Counsel said that any records that she had received from Petitioner or Petitioner's prior counsel would have been in her file, of which Petitioner's post-conviction counsel had a copy at the evidentiary hearing. Counsel said she met with Petitioner "several times" to discuss the case. Regarding the witness information Petitioner had provided her, Counsel said she "did call the numbers that she gave," including Ms. Smith, but Ms. Smith "was not particularly going to be a useful witness" because the criminal case "wasn't a matter of character."

Counsel admitted "there were two things that the State did" that she was "not prepared for," including the State's calling Mr. Henson as a witness. Counsel explained the impact of Mr. Henson's testimony, when she said, "Henson sat right here and said, she's as innocent as I am. And I think that that was pretty much a killer as far as testimony is concerned." Counsel further stated that Petitioner "had a hard time believing that Henson had abused her daughter," but eventually Petitioner "came to realize that he had."

Counsel testified about reviewing the discovery with Petitioner:

And I think the most shocking thing that happened when she and I were preparing, on one occasion we came down, we could not take the - - I could not take a copy of the child's video to my office for her to watch, we had to watch it here at the courthouse. She was shocked at the statement that the child made to the counselor, because she knew about the statement that the child had made to the investigating officer. And she included her mother in the statement that she made to the investigating officer. But she gave graphic descriptions to the counselor, which is why I wanted to see the videos that they destroyed to see whether or not those actions were actually actions in those videos.

Counsel explained Petitioner's defense at trial: "I was trying to prove that the child was making up a story about her mother. That was the theory that I was proceeding on[.]"

Counsel testified that she did not introduce Petitioner's psychological records and did not have Petitioner undergo a second psychological evaluation. Counsel explained that "[w]hen [Petitioner] walked into my office, she understood that I was not an attorney with any wealth. Her family could not afford a professional to sit on the stand and introduce the records and talk about her medical condition." Counsel stated that the likelihood that the trial court would have ordered the State to pay for copies of the psychological records was "slim to none."

Following the evidentiary hearing, the post-conviction court denied the petition in a written order. In each issue addressed in the order, the court found Petitioner failed to show prejudice. The court did not address deficiency in Counsel's performance.

Regarding Petitioner's claim that trial counsel failed to investigate and develop alternative theories of the victim's abuse, the post-conviction court noted that Petitioner's testimony at trial that she believed Mr. Henson abused the victim was inconsistent with the theory that she presented at the post-conviction hearing—that other men perpetrated the abuse. The court further found that "Petitioner failed to present any evidence at the post-conviction hearing to show that any investigation by trial counsel into other theories regarding the victim's statement would have revealed any evidence that Petitioner could have used at trial."

Regarding Petitioner's claim that trial counsel failed to request additional psychological evaluations of Petitioner or review Petitioner's first evaluation, the post-conviction court noted that Petitioner testified at the post-conviction hearing that she did

not want to submit to further psychological evaluation. Further, Petitioner "failed to present any evidence to show how the lack of a second psychological evaluation or trial counsel's review of her prior evaluation prejudiced her at trial."

Regarding Petitioner's claim that trial counsel failed to pursue an alibi defense, the post-conviction court observed that Petitioner failed to produce records in support of this claim at the post-conviction-hearing. Further, the court found that the victim testified at trial that Petitioner was not always present when the incidents occurred, so evidence showing her absence would have been unlikely to change the outcome at trial.

Finally, in rejecting Petitioner's claim that Counsel was ineffective in failing to preserve the inadequate discovery issue on appeal, the post-conviction court found that Petitioner "did not present any evidence at the post-conviction hearing regarding this discovery" or establish how "discovery of those items prior to trial would have resulted in a reasonable probability that the result of the proceeding would have been different."

Petitioner now timely appeals the post-conviction court's order.

## II. Analysis

On appeal, Petitioner maintains she received the ineffective assistance of counsel at trial. Specifically, she claims her counsel was ineffective for: (1) failing to call character witnesses on Petitioner's behalf; (2) failing to object to Mr. Henson's testimony; (3) failing to cross-examine the victim at trial; (4) failing to prepare to defend the Child Protection Act charges; (5) failing to use the existence of pornographic videos in Petitioner's home to support the defense theory of the case; (6) failing to fully investigate and introduce Petitioner's mental state as a possible defense; (7) failing to introduce Petitioner's work records at trial as an alibi; (8) failing to preserve a discovery issue; and (9) failing to present a theory that other men may have perpetrated the victim's abuse.[1] The State contends that many of these issues are waived and that the remaining are without merit. We agree with the State.

### Novel Issues

Under the Post-Conviction Procedure Act, petitioners must include all known claims for post-conviction relief in their petitions and verify under oath that no claims have been excluded. Tenn. Code Ann. § 40-30-104(d). Each claim for relief shall include supporting allegations of fact in addition to allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding. *Id.* § 40-30-104(e).

---

[1] We have reordered Petitioner's claims for clarity.

Further, "[t]he petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated, and mere conclusions of law shall not be sufficient to warrant any further proceedings." *Id.* § 40-30-106(d). On appeal, our supreme court has instructed that, "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (compiling cases).

Upon reviewing claims (1) through (7) in Petitioner's brief, we conclude that these are new issues that were not raised in her post-conviction petition, argued at the hearing, or addressed by the post-conviction court. Accordingly, Petitioner's claims (1) through (7) are waived and we will not further address them in this appeal. *Id.*

*Inadequately Briefed Issues*

Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Our court's rules say the same: "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

In claim (8), Petitioner asserts that Counsel "failed to argue that the existence of certain evidence presented by the State had not been previously disclosed to her. (T. 65)." Petitioner further asserts, "[Counsel] did not include the discovery issues at trial in her amended motion for the new trial and therefore waived that issue on appeal further preventing [Petitioner] from having the opportunity to have [Counsel] prepare evidence necessary to impeach the adverse testimony. (T. 50; 58-60)." Petitioner, however, does not offer any argument identifying what exactly the evidence was or how its absence resulted in prejudice. Moreover, Petitioner's citations to the record—"(T. 65)" and "(T. 50; 58-60)"—do not shed light on her assertions. "Without more, we cannot adequately review this issue, and we decline to do so." *Cauthern v. State*, 145 S.W.3d 571, 629 (Tenn. Crim. App. 2004) (citing Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b)). Petitioner has waived review of this issue.

Similarly, in issue (9) Petitioner asserts that "[Counsel] failed to present the theory as discussed and reviewed with [Petitioner] that other men may have committed the acts, and that [Petitioner] provided her with the identity of a family member that could have been the perpetrator. (T. 59-60)." However, Petitioner makes no argument as to why

- 7 -

Counsel's alleged failure was deficient or how it caused prejudice. Petitioner's brief on this issue is a one-sentence conclusion that is otherwise unsupported by argument or meaningful citation to the record. Accordingly, Petitioner has waived review of this issue. *See* Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

Despite Petitioner's waiver, our review of the record and applicable law reveal that Petitioner is not entitled to relief on the merits of claims (8) and (9). A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied by a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, a trial court's conclusions of law— such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a de novo standard, with no presumption of correctness given to the trial court's conclusions. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Concerning claim (8), that Counsel was ineffective for failing to preserve a discovery issue, the post-conviction court found that Petitioner did not "introduce the items not allegedly disclosed in discovery or any proof as to how the discovery of those items prior to trial would have resulted in a reasonable probability that the result of the proceeding would have been different." There is no proof which preponderates against the post-conviction court's findings. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating it is the petitioner's burden to present evidence to support the issues raised in the post-conviction petition). Hence, Petitioner is not entitled to relief on this claim.

Finally, as it relates to claim (9), that Counsel was ineffective failing to present a theory that other men may have perpetrated the victim's abuse, the post-conviction court found that Petitioner "failed to present any evidence at the post-conviction hearing to show that any investigation by [Counsel] into other theories regarding the victim's statement would have revealed any evidence that Petitioner could have used at trial." On appeal, Petitioner has failed to argue otherwise. *See Id.* Indeed, Petitioner's brief merely states that Counsel did not present a defense theory, with no argument as to how this failure was deficient or how it caused prejudice. Moreover, as the post-conviction court correctly stated, Petitioner's post-conviction allegation that other men perpetrated the abuse is inconsistent with her trial testimony that Mr. Henson did. *Thomas*, 2022 WL 4963715, at *9-10. Therefore, Petitioner is not entitled to post-conviction relief on this claim.

### III.  Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

<u>                /s/ Matthew J. Wilson</u>
MATTHEW J. WILSON, JUDGE